Alex K. Evans
Wayne E. Olson
GLACIER LAW FIRM, PLLC
165 Commons Loop, Suite 3
Kalispell, MT 59901
(406) 552-4343
alex@glacierlawfirm.com
wayne@glacierlawfirm

ATTORNEYS FOR PLAINTIFF,
KIMMIE S. BAGLEY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KIMMIE S. BAGLEY, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES, <br><br> Defendant. | CV 21-112-BLG-SPW-TJC <br><br> PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF CONTENTS  ..................................................................................... i

TABLE OF AUTHORITIES  ............................................................................. ii

EXHIBIT INDEX…………………………………………………………….iv

INTRODUCTION  ............................................................................................. 1

BACKGROUND FACTS ................................................................................... 4

ARGUMENT ...................................................................................................... 9

    A. Summary Judgment Standard.................................................................. 10

    B. Plaintiff's Claim Is Not Barred By The Independent-Contractor
       Exception To The FTCA ........................................................................ 11

       1.  The duty to clear the parking lot at the specific time of the incident
          was not delegated to JLL.................................................................. 11

       2.  Defendant remains liable for its own employees' negligence even if
          the duty to clear the parking lot at the specific time of the incident was
          delegated to JLL ............................................................................... 13

       3.  Even if the independent-contractor exception to the FTCA is relevant
          and applicable here, Defendant retained sufficient control over JLL to
          be held liable for its negligence ....................................................... 16

    C. Plaintiff's Claim Is Not Barred By The Discretionary-Function Exception
       To The FTCA ......................................................................................... 17

    D. Plaintiff's Claim Is Not Barred By The Supposedly Open And Obvious
       Nature Of The Defect............................................................................. 20

CONCLUSION ................................................................................................. 22

CERTIFICATE OF COMPLIANCE ...................................................... 23

## TABLE OF AUTHORITIES

<u>Page</u>

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................ 10, 11

*Beckman v. Butte-Silver Bow County*,
    2000 MT 112, 299 Mont. 389, 1 P.3d 348 .................................... 14

*Bolt v. United States*,
    509 F.3d 1028 (9th Cir. 2007) ....................................................... 19

*Bonebrake v. United States*,
    No. C19-1639 RAJ, 2021 U.S. Dist. LEXIS 200362
    (W.D. Wash. Oct. 18, 2021) .......................................................... 19

*Chadd v. United States*,
    794 F.3d 1104 (9th Cir. 2015) ....................................................... 19

*Dobrocke v. City of Columbia Falls*,
    2000 MT 179, 300 Mont. 348, 8 P.3d ........................................... 15

*Fikani v. United States*,
    No. CV 19-64-BU-SHE, 2021 U.S. Dist. LEXIS 95338
    (D. Mont. May 19, 2021) ......................................................... 13, 18

*Hines v. U.S.*,
    60 F.3d 1442 (9th Cir. 1995) ......................................................... 13

*Hsieh v. Consol. Engr. Servs., Inc.*,
    569 F. Supp. 2d 159 (D.D.C. 2008) ............................................... 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...................................................................... 10

*Nichols v. United States*,
    No.  CV 08-89-BU-RFC, 2010 U.S. Dist. LEXIS 118309
    (D. Mont. Nov. 8, 2010) ................................................................................. 21

*Richardson v. Corvallis Pub. Sch. Dist. No. 1*,
    286 Mont. 309, 950 P.2d 748 (Mont. 1997) ........................................... 20, 21

*Roberts v. Nickey*,
    2002 MT 37, 308 Mont. 335, 43 P.3d 263 .................................................. 15

*Robertson v. Ziplocal, LP*,
    No. CV 11-154-M-DWM, 2012 U.S. Dist. LEXIS 138566
    (D. Mont. Sep. 26, 2012) ............................................................................. 16

*Steichen v. Talcott Props., LLC*,
    2013 MT 2, 368 Mont. 169, 292 P.3d 458 ............................................ 13, 14

*Terbush v. United States*,
    516 F.3d 1125 (9th Cir. 2008) ..................................................................... 19

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) ....................................................................... 10

*Young v. Fed. Home Loan Mortg. Corp.*,
    No. CV 13-83-M-DWM, 2014 U.S. Dist. LEXIS 147088
    (D. Mont. Oct. 15, 2014) ............................................................................. 13

## RULES AND STATUTES

28 U.S.C. § 2671 ................................................................................................ 11

28 U.S.C. § 2680 ......................................................................................... 18, 19

Fed. R. Civ. P. 56 .............................................................................................. 10

## MISCELLANEOUS

Post Office Operations Manual § 126.43 ............................................................ 8

# EXHIBIT INDEX

*Plaintiff's Exhibit 1, Deposition of Darci Spitzer with Exhibits*…………6, 7

*Plaintiff's Exhibit 2, CompuWeather Forensic Weather Expert Site Specific Weather Analysis Report*………………………………………………………..5

*Plaintiff's Exhibit 3, Bagley v. United States Premises Liability Expert Report*……………………………………………………………………….5, 12

Plaintiff, Kimmie S. Bagley (the "Plaintiff"), through her undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby files her Opposition to the Motion for Summary Judgment by Defendant, United States (the "Defendant"), and states as follows:

## INTRODUCTION

This case concerns a slip-and-fall that Plaintiff suffered when she exited her vehicle in the parking lot of a post office operated by the Defendant. Plaintiff arrived at the post office parking lot before regular business hours and noticed snow and ice on the ground. Exercising caution, she stepped onto a clear spot that appeared safe. Unfortunately, the spot was covered by "black ice" that was not obvious and caused Plaintiff to fall and sustain injuries, including to her head (which struck the vehicle as she fell). In her Amended Complaint, Plaintiff asserts a single claim of negligence based on Defendant's failure to maintain the parking lot in a reasonably safe condition.

Defendant now moves for summary judgment based on three arguments First, Defendant argues that any negligence was committed by an independent contractor who was retained to clear snow and ice from the parking lot, meaning that the Defendant cannot be held liable because the postal employees are not responsible for what happened. Second, Defendant argues that the policy decision to allow visitors at the post office outside of regular business hours is a

discretionary function that further insulates Defendant from liability. Third, Defendant argues that the snow and ice were obvious conditions that prevent Plaintiff from claiming negligence altogether.

Defendant's arguments ignore several material facts and controlling principles of law, many of which appear in Defendant's own cited authorities. The facts and the law demonstrate that Plaintiff's claim of negligence is not only valid, but quite strong, and it deserves to reach a jury.

First, the contractor was not required to clear the parking lot at the specific time in question, as shown by the plain language of the contract and the undisputed fact that Plaintiff fell before the contractor was obligated to start working. The contractor also was on-call 24 hours a day, yet nobody at the post office placed such a service call. This means there was no applicable duty or breach of duty by the contractor, but rather by the employees who were at the post office and had been there for hours before Plaintiff arrived. It is undisputed that the subject lease requires the post office to remove snow and ice from the parking lot; that the employees had tools to minimize the danger of slips and falls; that the employees used such tools when they deemed necessary; that at least some of the employees parked in the lot that morning; and that an employee rushed out to assist Plaintiff when she fell. Under these circumstances, the duty to maintain the premises in a reasonably safe condition fell upon the postal employees, who failed to do so.

Second, even if the contractor failed to clear the parking lot as required by the contract, this does not relieve the Defendant of its own independent duty to maintain the premises in a reasonably safe condition. Both Montana and federal case law are emphatic on that point, and the record facts strongly suggest that the Defendant had plenty of advance notice and opportunity to prevent Plaintiff's injury.

Third, even if both of the foregoing points are mistaken, the Defendant retained and exercised extensive control over the contractor's activities, far beyond the enforcement of the contract's basic requirements. Such control means that the contractor's negligence, if any, is still imputed to the Defendant.

Fourth, the post office's decision to allow visitors outside of regular business hours does not transform routine maintenance such as removing snow and ice into a "discretionary function" that implicates public-policy concerns or exempts the Defendant from liability. Defendant's own cited authorities discuss a 2021 decision by this Court rejecting this argument. Moreover, case law from the Ninth Circuit Court of Appeals holds that clearing snow and ice from federal premises categorically does not qualify as a "discretionary function." Once again, this case law is discussed in Defendant's own cited authorities, but Defendant ignores it and makes a lengthy argument that is invalid as a matter of law.

Fifth, Plaintiff was not injured by an open or obvious condition, but rather by black ice that was not obvious. Even if the black ice were treated as open and obvious, this merely creates a jury question as to whether the Defendant still should have anticipated the danger. Once again, this is stated in Defendant's own cited authority, and the record facts show that Defendant indeed should have anticipated the danger and acted to prevent it.

When applying the law to the record facts, it becomes clear that Plaintiff has a valid and strong claim for negligence. Defendant's motion must be denied.

## BACKGROUND FACTS

Plaintiff admits certain of the paragraphs in Defendant's Statement of Undisputed Material Facts, particularly the ones describing the sequence of events and the relevant documents. However, in certain critical areas the Defendant has misstated or omitted material facts, as established by Plaintiff's own Statement of Disputed Material Facts ("SDMF") and Statement of Additional Material Facts ("SAMF").

Plaintiff worked for a plumbing company in early 2019 and would typically pick up the company's mail on her 30-mile one-way drive into work each day. SDMF ¶ 1. She arrived at the Centennial Post Office in Billings, Montana sometime before 7:30 a.m. on January 4, 2019 to do just that. SDMF ¶ 2. She parked in the same spot she usually parked in, closest to the door. SDMF ¶ 3.

When she opened the door to her truck, she saw snow and ice on the ground right next to the vehicle. SDMF ¶ 4. The last snowfall event on the premises was approximately on December 30-31, 2018, when approximately 4.9 inches of snow fell. SAMF ¶ 1; Ex. 2 - Justin Mordja, Premises Liability Report (Jan. 9, 2023); Ex. 3. - James Bria, Meteorologist Report (November 14, 2022).  Between December 31, 2018 and January 4, 2019, it is likely that JLL cleared the snow and ice from the premises and applied deicer. SAMF ¶ 2. Regardless, it is quite common for wind to blow snow back onto the sidewalk and the parking lot where it can melt and freeze, which is likely what happened in this case. SAMF ¶ 2. In order to avoid the snow and ice that she saw, Plaintiff stepped onto what appeared to be a clear patch of asphalt that was actually black ice and was not obvious. SDMF ¶¶ 5, 6. Her foot then slipped out from underneath her. SDMF ¶ 6. She doesn't remember exactly how she landed, but she does claim she scraped her back and hit her head and neck on the truck's running board as she fell. SDMF ¶ 7.

After Plaintiff fell, one of Defendant's employees came to check on her. SDMF ¶ 5. Indeed, several employees had arrived at the post office long before Plaintiff did. SDMF ¶ 5. At least some of those employees parked in the parking lot. SDMF ¶ 5. The employees had tools and warning signs that they could (and sometimes did) use to diminish the danger of snow and ice on the premises when necessary, including on the parking lot. SDMF ¶ 5. The subject lease also states

that the Defendant is responsible for removing snow and ice from the parking area. Depo. SDMF ¶ 5.

At the time of the incident, the Postal Service contracted with Jones Lang Lasalle, Inc. ("JLL") to remove snow and ice at post offices in the Dakotas District, which includes Montana. SDMF ¶ 8. The stated purpose of the contract was "to combat adverse weather conditions in a comprehensive, proactive, and orderly manner that results in a high level of quality and safety for the USPS." SDMF ¶ 9. To that end, the contract required that "[i]f the accumulation of snow exceeds two (2) inches, the Contactor shall commence the snow removal operation without further notification, in accordance with the" Statement of Work attached to the contract. SDMF ¶ 10. The contract also states that, regardless of the amount of accumulation, "[i]f ice is present, the Contactor shall apply a deicer that will effectively melt the ice." SDMF ¶ 11. **However, the contract does not require JLL to clear snow and ice until at least one hour before business hours start at 8:30am (i.e., at 7:30am), which was after Plaintiff slipped and fell.** SDMF ¶¶ 2, 13, 17.

Additionally, under the contract JLL was "accessible on a 24 hour, 365 day basis[.]" SAMF ¶ 3. JLL operated a 24-hour customer call center and was required to keep a log of all such calls and respond to them within two (2) hours. SAMF ¶ 3. Darci Spitzer, who managed the post office at the time in question, was not aware

of 24-hour call center and never had used it. SAMF ¶ 4. There is no log entry showing a service call from the post office to JLL on or near January 4, 2019. SAMF ¶ 4. This is despite the fact that employees at the post office made service calls to contractors to clear snow from the premises on other occasions. SAMF ¶ 4.

To reiterate, several employees had arrived at the post office on January 4, 2019, hours before the Plaintiff did and could observe the conditions of the parking lot. SDMF ¶ 5; Depo. Spitzer at 29:7-11; 30:6-8. Also to reiterate, the employees at the post office had tools and warning signs that they could (and sometimes did) use to diminish the danger of snow and ice on the premises when necessary (including on the parking lot). SDMF ¶ 5. The normal and customary expectation under these circumstances would be for the customer either to remove a small amount of snow from the area or to contact the contractor, but the post office did neither. SAMF ¶ 5. This is especially true here because the manager of the post office at the relevant time admits that snow is a hazard; that it snows in Billings; that she never saw the contractors put up warnings; that the post office had warning signs of its own; and that on January 4, 2019, she did not recall any warning signs in the parking lot. SAMF ¶ 6.

The Defendant also retained extensive control over JLL's work, far beyond the general standards summarized in the contract, as follows:

- The Defendant retains broad power to monitor the contractor's activities and supplies, including the power to "require correction of defects and nonconformance at no cost to the [Defendant]."

- The Defendant may demand "adequate assurances of future performance" and terminate the contract if such assurances are not given.

- The Defendant specifies in detail how the contractor must prepare and present the invoices for its work, lest payment for those services be delayed.

- The Defendant reserves the right to call upon the contractor 24 hours a day and 365 days a year (including holidays).

- The Defendant requires the contractor to establish a 24-hour customer call center and to keep a detailed log of all calls.

- The Defendant requires the contractor to remain in communication with the Defendant before, during, and after each storm and to submit detailed Corrective Action Plans upon request).

SDMF ¶ 16.

The post office allowed 24-hour customer access to the lobby and post office box areas of the facility, even though the office was officially open for business only between 8:30 a.m. and 5:30 p.m. SDMF ¶ 17. The Postal Operations Manual

("POM"), which "sets forth the policies, regulations, and procedures of the Postal Service governing retail, philatelic, collection, mail processing, transportation, delivery, and vehicle operations," addresses 24-hour access in § 126.43. SDMF ¶ 18. However, POM § 126.43 concerns the lobby rather than the parking lot. SDMF ¶ 18. Once again, maintenance of the parking lot is governed by the lease, which states that the Defendant is responsible for removing snow and ice. SDMF ¶ 18. Maintenance of the parking lot is also governed by other of the Defendant's internal policies and procedures, which require Defendant to uphold safety and to prevent accidents where possible, including but not limited to the removal of snow and ice. SDMF ¶ 18.

## ARGUMENT

The record facts and the applicable law show that Plaintiff has asserted a valid claim for negligence that should be decided by a jury. Defendant had the duty *and* the ability to maintain the parking lot in a reasonably safe condition for Plaintiff, but Defendant failed to do so. This duty was not delegated to JLL during the specific time of day when Plaintiff sustained her injury. Even if the duty had been delegated for that time, Defendant still had an obligation to maintain the premises in a reasonably safe condition, and Defendant exercised such extensive control over JLL that any negligence by JLL would be imputed to the Defendant anyway. Routine maintenance such as clearing snow and ice from a parking lot

does not implicate the larger policy concerns of the Postal Service or trigger the "discretionary" exemption from liability. Finally, the condition that caused Plaintiff's injury was not open or obvious, and even if it were this would create a jury question regarding whether Defendant should still have anticipated harm.

## A.    Summary Judgment Standard

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the moving party has met its burden of demonstrating that there is no genuine issue of material fact that should be decided at trial, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts, through

affidavits or other forms of evidence provided for by the rules. *Id.* at 586 n.11. The question then becomes "[w]hether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251, 252.

For the reasons set forth in more detail below, Plaintiff meets and exceeds her burden to resist Defendant's motion for summary judgment.

**B.    Plaintiff's Claim Is Not Barred By The Independent-Contractor Exception To The FTCA**

Defendant argues that the Federal Tort Claims Act (the "FTCA") bars relief because Plaintiff's claim supposedly stems from the negligence of an independent contractor (JLL) rather than from Defendant's employees, triggering the exception from liability at 28 U.S.C. § 2671. Dkt. 27 at 11-18. More specifically, Defendant argues that it delegated the *entire* duty of maintaining the parking lot *24 hours a day and 7 days a week* to JLL, who retained control over how it performed this duty, thereby relieving Defendant's employees of any duty of their own that might have been owed to the Plaintiff at the time and place in question. *Id.* Defendant's argument suffers from a variety of serious problems.

**1.    <u>The duty to clear the parking lot at the specific time of the incident was not delegated to JLL</u>**

The first problem with Defendant's argument is that the contract with JLL did not, in fact, require JLL to maintain the parking lot 24 hours a day and 7 days a

week. Defendant is mischaracterizing a section of the contract stating merely that JLL "shall be **<u>accessible</u>** on a 24 hour, 365 day basis[.]" (Emphasis added.) SDMF ¶ 13. A different section plainly states that JLL is not required to clear snow and ice until at least one hour before business hours at 8:30am (i.e., at 7:30am). SDMF ¶¶ 13, 17. This was after Plaintiff arrived at the post office and sustained her injury (slightly before 7:30am). SDMF ¶¶ 2, 13. If the Defendant required JLL's services before 8:30am, Defendant could have placed a service call to JLL but failed to do so despite having plenty of prior notice and opportunity. Indeed, the manager of the post office was unaware of JLL's customer call center and never even used it.

Defendant itself cites a decision holding that an FTCA claim remains valid if it is based on a particular duty that was not delegated to an independent contractor, which is the case here because the duty to clear the parking lot at the specific time in question was not delegated to JLL. *Hsieh v. Consol. Engr. Servs., Inc.*, 569 F. Supp. 2d 159, 177 (D.D.C. 2008) (cited in Dkt. 27 at 13). This means that the duty remained with the Defendant, not only because the subject lease obligated Defendant to clear snow and ice from the parking lot, and not only because Defendant could have made a service call or taken independent action, but also because Defendant's internal policies and procedures required this sort of vigilance. Ex. 2 - Mordja, Premises Liability Report (Jan. 9, 2023) at 4; SDMF ¶ 18.

**2.** **Defendant remains liable for its own employees' negligence even if the duty to clear the parking lot at the specific time of the incident was delegated to JLL**

The second problem with Defendant's argument is that even if the relevant

duty had been delegated to JLL, this would not relieve Defendant of liability for its

employees' negligence, a fundamental principle again recognized in Defendant's

own cited authority. *Hines v. U.S.*, 60 F.3d 1442, 1448 (9th Cir. 1995)

("Notwithstanding our determination that Wright and Smith are not federal

employees, the United States can still be subject to FTCA liability if its own

employees acted negligently.") (cited in Dkt. 27 at 13). This principle has been

cited repeatedly in Montana's federal and state courts to validate claims for

premises liability even where the owner or operator retains an independent

contractor. *See Fikani v. United States*, No. CV 19-64-BU-SHE, 2021 U.S. Dist.

LEXIS 95338, at *5, *6 (D. Mont. May 19, 2021) ("Although the United States

cannot be held liable for [the contractor's] actions, it could be held accountable for

its own separate acts or omissions concerning maintenance of the lobby or other

duties[.]"); *Young v. Fed. Home Loan Mortg. Corp.*, No. CV 13-83-M-DWM,

2014 U.S. Dist. LEXIS 147088, at *8, *9 (D. Mont. Oct. 15, 2014) (holding that

genuine issues of fact created a jury question of whether federal agency negligently

maintained premises despite hiring independent contractor); *Steichen v. Talcott*

*Props., LLC*, 2013 MT 2, ¶¶ 8-18, 368 Mont. 169, 292 P.3d 458 ("Independent

contractor status is relevant in construction industry cases, but not in ordinary
premises liability cases.").

Defendant attempts to avoid this problem by citing a Montana precedent –
*Beckman v. Butte-Silver Bow County*, 2000 MT 112, 299 Mont. 389, 1 P.3d 348 –
to argue that the present case does not fit any of the limited "exceptions" to the rule
against liability for an independent contractor's negligence. Dkt. 27 at 15-18. But
Defendant overlooks that the Montana Supreme Court has held that *Beckman*
applies only in the construction context and has no relevance to ordinary claims for
premises liability, which remain valid if the owner or operator was negligent.
*Steichen*, 2013 MT 2 at ¶¶ 8-18 (distinguishing *Beckman* and similar cases). The
holding in *Steichen* is echoed in Defendant's cited decision of *Edison v. U.S.*, 822
F.3d 510, 518 (9th Cir. 2016) ("The independent contractor exception, however,
has no bearing on the United States' FTCA liability for its *own* acts or omissions.")
(italics in original) (cited in Dkt. 27 at 15). Defendant also overlooks ample
evidence of its own employees' negligence. Several employees had arrived at the
post office long before Plaintiff did. SDMF ¶ 5. At least some of those employees
parked in the parking lot. SDMF ¶ 5. The employees had tools and warning signs
that they could (and sometimes did) use to diminish the danger of snow and ice on
the premises when necessary (including on the parking lot). SDMF ¶ 5. The subject
lease also states that the Defendant is responsible for removing snow and ice from

the parking area. Depo. SDMF ¶ 5. Maintenance of the parking lot is also governed by other of the Defendant's internal policies and procedures, which require Defendant to uphold safety and to prevent accidents where possible, including but not limited to the removal of snow and ice. SDMF ¶ 18. After Plaintiff fell, one of Defendant's employees came to check on her (indicating the employees' ability to monitor the parking lot). SDMF ¶ 5.

In addition, the Defendant had a duty to warn that could not be delegated to JLL. The Montana Supreme Court has consistently held as a matter of law that "the owner of a premises has a duty to use ordinary care in maintaining his premises in a reasonably safe condition and to **warn** of any hidden or lurking dangers." *Dobrocke v. City of Columbia Falls*, 2000 MT 179, ¶ 30, 300 Mont. 348, 8 P.3d 71, *overruled in part on other grounds by Roberts v. Nickey*, 2002 MT 37, ¶ 14, 308 Mont. 335, 43 P.3d 263 (emphasis added). It is not necessary for the owner or operator of the premises to have actual knowledge of such a danger, since a jury is entitled to determine whether the owner or operator had sufficient opportunity to inspect the premises and give advance warning. *Dobrocke* at ¶¶ 45-47. Such is the case here. Defendant had warning signs and had plenty of time to inspect the condition of the premises to ascertain the presence of snow and ice (an admittedly hazardous condition) and place the warning signs in the parking lot before Plaintiff arrived and was harmed.

To summarize, the mere fact that Defendant hired JLL to clear the parking lot of snow and ice does not dispose of Defendant's own duty or Plaintiff's claim for breach of that duty. JLL was not obligated to clear the parking lot at the time the incident happened, and even if JLL was so obligated, it would not make a difference because it did not relieve the Defendant of its separate duty to warn Defendant's employees had a duty to warn and the ability to anticipate the danger so as to minimize or even remove it, but they failed to so and may be held liable.

### 3. Even if the independent-contractor exception to the FTCA is relevant and applicable here, Defendant retained sufficient control over JLL to be held liable for its negligence

Assuming arguendo that both of the foregoing points are incorrect and that the independent-contractor exception to the FTCA is relevant and applicable, the record shows that the Defendant retained sufficient control over JLL to be held liable for any negligence that JLL committed.

As explained by this Court in Defendant's cited decision of *Robertson v. Ziplocal, LP*:

> A principal may be liable for the torts of an independent contractor if it "knows or should know that the independent contractor is performing work in an unreasonably dangerous manner, and if the employer retains the authority to direct the manner in which work is to be performed.". . . **A principal can retain such authority by taking control of its independent contractor's actions or by reserving that authority in a contract**.

No. CV 11-154-M-DWM, 2012 U.S. Dist. LEXIS 138566, at *10 (D. Mont. Sep. 26, 2012) (emphasis added) (citations omitted) (cited in Dkt. 27 at 13).

As explained above, the Defendant knew or should have known that JLL was performing its work in an unreasonably dangerous manner on the day in question since Defendant's employees arrived at the post office hours before the Plaintiff and thus possess superior knowledge of the lot's conditions that would have enabled them to warn visitors or pick up the phone and call JLL.  SDMF ¶ 5. Moreover, Defendant's employees had a habit of using their own tools to minimize the danger of snow and ice on the premises when necessary. *Id.*  This shows how Defendant's employees assumed some snow removal maintenance duties and did not delegate them in full to JLL.  It further illustrates how the Defendants failed to take action despite knowledge of the danger as well as fulfill its separate duty to warn. *Id.* As for the contract with JLL, it reserves sweeping authority to Defendant to monitor JLL's activities and instruct JLL when and how to perform its work, 24 hours a day and 365 days a year. SDMF ¶ 16.

Under the record facts and applicable law, Defendant is liable for any negligence by JLL even if JLL is treated as an independent contractor.

## C.   Plaintiff's Claim Is Not Barred By The Discretionary-Function Exception To The FTCA

Defendant goes on to assert that a separate exception from FTCA liability bars relief, namely the exception for "discretionary functions" appearing at 28

U.S.C. § 2680. Defendant describes the exception in detail and cites a large amount of case law to argue that the decision to leave the lobby open 24 hours a day was an exercise of discretion that implicates the larger policy concerns of the Postal Service, thereby warranting protection from liability. Dkt. 27 at 18-26.

The first, serious problem with this argument is that this very Court has rejected it, holding that a post office's discretion over lobby hours does *not* diminish or eliminate the duty to maintain the reasonable safety of the premises, but rather confirms such duty: "[O]nce the decision to keep the lobby open was implemented, the duty assumed by the United States with respect to maintenance of a safe customer area was both dictated and required by the Handbook, and which required and directed the United States to 'always maintain a dry area for pedestrian traffic.'" *Fikani*, 2021 U.S. Dist. LEXIS 95338, at *4. Defendant's failure to mention *Fikani* is rather surprising when considering that one of Defendant's own cited authorities acknowledges that *Fikani* charts a different course from what courts in other jurisdictions have done, as follows:

> The District of Montana has reached a different result. . . . In *Fikani*, the plaintiff slipped and fell in a puddle of water on the lobby floor of a post office in Belgrade, Montana. . . . The *Fikani* Court reasoned that, although the Belgrade Postmaster had discretion to allow the lobby to remain open 24-hours-a-day, such decision carried with it a duty, outlined in the Supervisor's Safety Handbook, to "always maintain a dry area for pedestrian traffic." . . . The *Fikani* Court further concluded that, even if the decision of whether or not to maintain a dry area for pedestrians was discretionary, it was not grounded in social, economic, and political policy

*Bonebrake v. United States*, No. C19-1639 RAJ, 2021 U.S. Dist. LEXIS 200362, at

*6, *7 (W.D. Wash. Oct. 18, 2021) (cited in Dkt. 27 at 23).

In similar fashion, the post office here had extensive internal policies and

procedures for maintaining the safety of the premises. SDMF ¶ 18. Therefore, the

logic of the case law (partially) referenced by Defendant compels not treating

routine maintenance as a larger policy concern triggering the exception from

liability.

Any doubt on this point has been eliminated by the Ninth Circuit Court of

Appeals, which holds that routine removal of snow and ice from federal premises

categorically does not trigger the "discretionary function" exception at U.S.C. §

2680. *Bolt v. United States*, 509 F.3d 1028, 1032-35 (9th Cir. 2007). Again,

Defendant's failure to mention *Bolt* is rather surprising when considering that two

of Defendant's own cited authorities acknowledge its holding. *Terbush v. United*

*States*, 516 F.3d 1125 (9th Cir. 2008) ("Our case law directs that, by nature,

matters of routine maintenance are not protected by the discretionary function

exception because they generally do not involve policy-weighing decisions or

actions. *See Bolt v. United States*, 509 F.3d 1028, 1034 (9th Cir. 2007)[.]") (cited in

Dkt. 27 at 19); *Chadd v. United States*, 794 F.3d 1104, 1125 (9th Cir. 2015) ("In

*Bolt v. United States*, the Army's failure to remove snow and ice from parking lot

was not protected. All these involved the exercise of discretion, as almost all

negligence does. But as in this case, the particular exercise of discretion at issue did not require a weighing of public policy considerations.") (cited in Dkt. 27 at 18, 19).

On top of all this, the case law cited by the Defendant deals with incidents occurring within or appurtenant to a post office's lobby, not in the parking lot, so it is even more irrelevant to the present case.

Clearly, the discretionary-function exception to FTCA liability does not apply to this case or bar Plaintiff's claim.

**D.    Plaintiff's Claim Is Not Barred By The Supposedly Open And Obvious Nature Of The Defect**

Finally, Defendant argues that Plaintiff cannot recover because "a property owner is not liable for injuries resulting from open and obvious conditions when the property owner should not have anticipated the harm." Dkt. 27 at 26 (citing *Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 286 Mont. 309, 950 P.2d 748 (Mont. 1997)). According to Defendant, the snow and ice in the parking lot constituted just such an open and obvious condition that forecloses relief. Dkt. 27 at 26.

Yet the black ice that Plaintiff stepped onto was not open and obvious, as it appeared to be a clear patch of asphalt that Plaintiff used in order to avoid the snow and ice that she was able to see. SDMF ¶¶ 4-6.

But even if the spot where Plaintiff stepped were treated as an open and obvious danger, this would merely trigger the second part of the *Richardson* test,

namely whether the Defendant should have anticipated the harm: "[T]he possessor of the premises may only be absolved from liability for injuries resulting from open and obvious dangers if he should not have anticipated harm to occur." *Richardson*, 950 P.2d at 756. Defendant fails to discuss this test or offer any record evidence to satisfy it. Plaintiff, however, presents record evidence that the Defendant could have and should have anticipated her harm. To reiterate, several employees had arrived at the post office long before Plaintiff did. SDMF ¶ 5. At least some of those employees parked in the parking lot. SDMF ¶ 5. The employees had tools and warning signs that they could (and sometimes did) use to diminish the danger of snow and ice on the premises when necessary (including on the parking lot). SDMF ¶ 5. The subject lease also states that the Defendant is responsible for removing snow and ice from the parking area. Depo. SDMF ¶ 5. And after Plaintiff fell, one of Defendant's employees came to check on her. SDMF ¶ 5. In short, there is ample evidence creating a genuine issue of fact as to whether the Defendant should have anticipated the harm here, which defeats summary judgment even assuming for purposes of argument the defect was open and obvious (and it was not).

Defendant also cites as instructive *Nichols v. United States*, No.  CV 08-89-BU-RFC, 2010 U.S. Dist. LEXIS 118309 (D. Mont. Nov. 8, 2010), a decision that was issued following a trial. Such a decision does not support granting summary

judgment, but rather supports denying it and allowing the multiple and genuine issues of fact to be resolved at trial as well.

## CONCLUSION

For the foregoing reasons, Plaintiff has met and exceeded her burden to resist summary judgment, and she requests that the Court enter an order that denies Defendant's motion for summary judgment and that grants such other and further relief the Court deems warranted.


Dated: March 31, 2023

By      /s/ Alex K. Evans
        GLACIER LAW FIRM, PLLC
        165 Commons Loop, Suite 3
        Kalispell, MT 59901
        (406) 552-4343
        alex@glacierlawfirm.com
        *Attorney for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points, and contains 6,037 words, excluding the caption, certificate of compliance, table of contents and authorities, exhibit index, and any certificate of service.

/s/ Alex K. Evans
GLACIER LAW FIRM, PLLC
165 Commons Loop, Suite 3
Kalispell, MT 59901
(406) 552-4343
alex@glacierlawfirm.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I do hereby certify that on March 31st, 2023, I provided a true and correct copy of the foregoing document via the method as shown below, and addressed to the following:

1. JOHN M. NEWMAN
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 8329
Missoula, MT 59807
101 E Front Street, Suite 401
Missoula, MT 59802
Phone: (406) 829-3336
Email: john.newman@usdoj.gov

[  ]  Hand-Delivery
[  ]  U.S. First Class Mail
[  ]  Overnight Delivery Service
[X]  E-Mail (include email in address)
[  ]  Facsimile (include fax number in address)

2. ABBIE J.N. CZIOK
Assistant U.S. Attorney
U.S. Attorney's Office
901 Front Street, Suite 1100
Helena, MT 59626
Phone: (406) 457-5268
Fax: (406) 457-5130
Email: abbie.cziok@usdoj.gov

Harley Siderius
Paralegal to Alex K. Evans

27