IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KIMMIE S. BAGLEY,<br><br>                        Plaintiff,<br><br>vs.<br><br>UNITED STATES,<br><br>                        Defendant. | CV 21-112-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Kimmie S. Bagley ("Plaintiff") brings this action against Defendant United States ("United States"), alleging negligence based on a slip-and-fall Plaintiff suffered in the parking lot of a post office.  (Doc. 1.)

Presently before the Court is the United States' Motion for Summary Judgment (Doc. 26), which has been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B).  The motion is fully briefed and ripe for the Court's review.

Having considered the parties' submissions, the Court **RECOMMENDS** the United States' motion be **DENIED**.

## I.      BACKGROUND[1]

Plaintiff worked for a plumbing company in early 2019, and would typically pick up the company's mail on her drive into work each day.  Sometime before

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment and are taken from the parties' submissions and are undisputed except where indicated.

1

7:30 a.m. on January 4, 2019, Plaintiff arrived at the Centennial Post Office in Billings, Montana to retrieve her employer's mail.  She parked in the same spot where she usually parked, closest to the door.  When she opened the door of her truck, she saw snow and ice on the ground right next to the vehicle.

The parties dispute whether the ice was open and obvious to her.  Plaintiff asserts that although she saw snow and ice on the ground, she stepped onto what appeared to be a clear patch of asphalt.  She contends the patch was actually black ice, and her foot slipped out from underneath her.  Plaintiff doesn't remember exactly how she landed, but she claims she scraped her back and hit her head and neck on the truck's running board as she fell.  Plaintiff asserts that the last snowfall event in Billings occurred 4-5 days prior to her fall, when approximately 4.9 inches of snow fell in the area on or about December 30-31, 2018.  (Doc. 34 at 18.)

Prior to January 4, 2019, the Postal Service contracted with Jones Lang Lasalle, Inc. ("the Contractor") to remove snow and ice at post offices in the Dakotas District, which includes Montana.  The stated purpose of the contract was "to combat adverse weather conditions in a comprehensive, proactive, and orderly manner that results in a high level of quality and safety for the USPS."  (Doc. 28-2 at 24.)

The contract provided:

**A.1.1.1**  The Contactor [sic] shall maintain the assigned facilities free from all hazardous conditions that may develop from ice or snow at

entrances, steps, landings, sidewalks, and parking lots.  All sidewalks, stairways, and parking lots shall be clear of all snow and ice at least one hour prior to the beginning of business hours to accommodate mail trucks and on as-needed basis throughout the duration of the storm.

(*Id.*)

With regard to snow and ice removal, the contract specified:

**A.1.1.5.1  Parking Lots**  - If the accumulation of snow exceeds two (2) inches, the Contactor [sic] shall commence the snow removal operation without further notification, in accordance with the SOW.

. . .

**A.1.1.6  Ice Control** – If ice is present, the Contactor [sic] shall apply a deicer that will effectively melt the ice.

. . .

**A.1.1.6.1**  Pretreatment Requirement – The Contactor [sic] shall be proactive in applying deicer by mobilizing manpower, equipment and materials.  Pretreatment services of all applicable sidewalks, stairways, and parking lots shall be completed prior to and during the storm if temperatures are expected to be below freezing.

(*Id.* at 24-25.)

With regard to the contractor's availability, the contract provided:

**A.1.1.10**  The Contactor [sic] shall be accessible on a 24 hour, 365 day basis, including holidays.  The Contactor [sic] is required to provide the 24 hour customer service number to the facility.

. . .

**A.1.3  CUSTOMER CALL CENTER** – The Contactor [sic] shall establish a 24-hour customer call center to receive and respond to service requests and inquiries from the facilities under the contract.

3

The Contactor [sic] shall have a 24-hour customer service number for the facilities to call for service.  The Contactor [sic] shall respond to the service calls within two (2) hours of receiving the call if the complaint is that service has not provided when the snow triggers exist: 2" of snow on the ground in the parking lot, 1" of snow on the sidewalks, and/or ice is present.  If no response within 2 hours, the call is to be escalated to the Contracting Officer for administrative action.

(*Id.* at 25-26.)

Postal Service employee Darci Spitzer managed the Centennial Post Office in January 2019.  Spitzer testified that she had nothing to do with the work of the Contractor with respect to removing snow and ice.  She also testified that she did not know the Contractor had a 24-hour call center, and she did not remember ever calling for service.

The Centennial Post Office allowed 24-hour customer access to the lobby and post office box areas of the facility, but was only open for other business between 8:30 a.m. and 5:30 p.m.  The Postal Operations Manual provides that "[a]t a minimum customers must have access to their PO Boxes during all retail service hours of operation," and that "[a]t the postmaster's discretion, lobbies may remain open 24 hours a day to allow customers access to PO Boxes and self-service equipment."  (Doc. 28-5 at 6.)

On November 4, 2021, Plaintiff filed the instant action against the United States, alleging a single claim for negligence.  The United States now moves for summary judgment in its favor.

4

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party.  *See Matsushita*, 475 U.S. at 587.

## III.    DICUSSION

The United States argues Plaintiff's negligence claim fails for three reasons: (1) the claim is barred by the independent contractor exception to the FTCA; (2) the claim is barred by the discretionary function exception to the FTCA; and (3) in the alternative, the claim fails because the ice Plaintiff slipped on was open and obvious.

The United States, as a sovereign, is absolutely immune from suit unless it has expressly waived its immunity and consented to suit.  *United States v. Shaw*,

309 U.S. 495, 500-501 (1940); *FDIC v. Meyer*, 510 U.S. 471 (1994).  The FTCA

waives sovereign immunity for certain torts committed by federal employees, and

provides "[t]he United States shall be liable . . . in the same manner and to the

same extent as a private individual under like circumstances."  28 U.S.C. § 2674.

The FTCA also contains several express exceptions that further define the

parameters of the FTCA's waiver of sovereign immunity.  Here, the United States

relies on the independent contractor exception under 28 U.S.C. § 2671, and the

discretionary function exception under 28 U.S.C. § 2680(a).

### A.    Independent Contractor Exception to the FTCA

The United States first argues that because the Postal Service contracted

with a national firm to remove snow and ice from the parking lot, Plaintiff's claims

are barred by the independent contractor exception to the FTCA.

The FTCA's limited waiver of sovereign immunity "contains an explicit

exception for contractors, such that the federal government is not liable for torts

committed by its contractors."  *U.S. ex rel. Ali v. Daniel, Mann, Johnson &*

*Mendenhall*, 355 F.3d 1140, 1146 (9th Cir. 2004) (citing 28 U.S.C. §§ 1346(b),

2671).  But the United States is not "absolved of all liability, no matter what the

injury complained of or its cause, any time it hires an independent contractor."

*Edison v. U.S.*, 822 F.3d 510, 517 (9th Cir. 2016).  The independent contractor

exception "has no bearing on the United States' FTCA liability for its *own* acts or

omissions." *Id.* at 518.  Thus, even where the United States has delegated some responsibilities to an independent contractor, the government "may still be held separately and directly liable for its own negligence." *Id.*

In the Ninth Circuit, the United States' liability for its own acts or omissions under the FTCA is determined by a three step inquiry. *Edison*, 822 F.3d at 519. First, the court must determine if state law would impose a duty of care on a private individual in a similar situation. *Id.*  Second, if it would, the court then looks "to the contract and the parties' actions to determine whether the United States retained some portion of that duty for which it could be held directly liable." *Id.*  Third, even if it appears the United States delegated all of its duties to the independent contractor, the court determines whether state law imposed any nondelegable duties on the United States. *Id.*

With regard to the first element, it is undisputed that Montana law imposes upon a property owner a general duty to maintain a premises in a reasonably safe condition. *Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 950 P.2d 748, 755-56 (Mont. 1997).  This includes the duty to exercise ordinary care in the maintenance of natural accumulations of snow and ice. *Id.* at 756.  Here, the lease for the Centennial Post Office building specified that the Postal Service was responsible for snow and ice removal from the sidewalks, driveway, and parking area.  (Doc. 34-1 at 168.) ("The Postal Service agrees to furnish and pay for the timely removal

of snow and ice from the sidewalks, driveway, parking and maneuvering areas, and any other areas providing access to the postal facility for use by postal employees, contractors, or the public.").  Thus, the United States had a duty to take reasonable steps to ensure the premises of the Centennial Post Office was reasonably safe for visitors.

As to the second element, the United States contends it delegated all of its duty to conduct snow removal to an independent contractor.  The United States asserts that according to the contract, the Contractor was responsible for removing snow and ice accumulations that met certain defined thresholds "without further notification" from the Postal Service.  (Doc. 28-2 at 24.)  The United States contends the Contractor also assumed all responsibility for removing snow and ice "on a 24 hour, 365 day basis, including holidays."  (*Id.* at 25.)  The United States further points out that its interpretation of the contract is consistent with Spitzer's testimony that she had no contact with the Contractor with regard to removing snow and ice.  Therefore, according to the United States, it did not retain any obligation of its own relating to snow and ice removal.

Conversely, Plaintiff points to language in the contract that indicates the United States' duty was not wholly delegated to the Contractor.  For example, the Contractor was not required to conduct snow removal without notification by the Postal Service unless the accumulation of snow exceeded two inches.  Plaintiff

8

further argues that the Contractor was not required to clear the parking lot at the specific time of day when Plaintiff fell.  Plaintiff notes the contract stated the Contractor shall clear "all snow and ice at least one hour prior to the beginning of business hours."  (Doc. 28-2 at 24.)  Thus, Plaintiff argues, the Contractor was not required to have the snow and ice cleared until 7:30 a.m., which was one hour before business hours at 8:30 a.m.  Plaintiff states she arrived at the post office and sustained her injury slightly before 7:30 a.m.

Further, Plaintiff argues the Contractor was not, in fact, required to maintain the parking lot 24 hours a day, 7 days a week, but rather was only required to "be *accessible* on a 24 hour, 365 day basis, including holidays." (*Id.* at 25) (emphasis added).)  To that end, the Contractor was required to provide a 24-hour customer service number to the facility, respond to service calls within two hours, and keep a log of all calls.  (*Id.* at 25-26.)  Plaintiff notes that postal employees had made service calls to have snow cleared on other occasions, but there was no log entry showing a service call from the Centennial Post Office on or near January 4, 2019. (Doc. 34-1 at 219-277.)

In addition, Plaintiff argues several postal employees had arrived at the post office long before Plaintiff did, some as early as 3:00 a.m.  (Doc. 34-1 at 29-30.) At least some of the postal employees parked in the parking lot, and presumably had the opportunity to view the condition of the parking lot.  (*Id.* at 44-45.)

Plaintiff further points out that the post office had ice melt and warning signs available that employees could use when necessary.  (*Id.* at 37-40, 92-94.)  Spitzer testified that employees did sometimes use the ice melt on the premises when necessary, including on the parking lot.  (*Id.* at 39-40.)

Drawing all inferences from these facts in the light most favorable to the Plaintiff, the Court finds Plaintiff has provided sufficient evidence from which a rational trier of fact could find the United States retained at least some of its duty to maintain the premises in a reasonably safe condition with respect to snow and ice for which it could be held directly liable.  While the Contractor was required to be accessible at all times, the Contractor was only required to perform snow removal without notification during certain hours and when snow accumulations were greater than two inches.  Postal employees had resources to treat snow and ice on the premises and had done so on other occasions.

The exact scope of the Unites States' shared responsibility, and whether it exercised reasonable care in this case, are genuine issues of fact requiring trial. *See e.g. Merritt v. United States*, 592 F.Supp.3d 340, 351 (D. Vt. 2022) (finding genuine of issues of material fact existed on extent of shared responsibility between Postal Service and an independent contractor hired to remove snow and ice); *Haskin v. United States*, 569 Fed. Appx. 12 (2d Cir. June 11, 2004) (finding

genuine issues of material fact as to postal employees' negligence despite government's retention of contractor for removal of snow and ice).

Accordingly, summary judgment on the basis of the independent contractor exception to the FTCA is not appropriate.[2]

### B.   Discretionary Function Exception to the FTCA

Next, the United States argues Plaintiff's claims are barred by the discretionary function exception to the FTCA.  The discretionary function exception limits the FTCA's waiver of sovereign immunity where claims are "based upon the exercise or performance . . . [of] a discretionary function or duty of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).

A two-step analysis is used to determine whether the discretionary function exception applies.  *U.S. v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996).  The first step asks whether the challenged conduct involves "an element of judgment or choice."  *Gaubert*, 499 U.S. at 322.  Where federal law or policy specifically prescribes a course of action for the employee, the exception will not apply because the employee has no rightful option to exercise discretion.  *Id.*; *see also Berkowitz v. U.S.*, 486 U.S. 531,

---

[2] Because the analysis of the *Edison* factors can be resolved at the second step, the court need not reach the third element.  *Edison*, 822 F.3d at 522, 523 n.10.

536 (1988).  If the challenged conduct involves an element of choice or judgment, then the second step asks, "whether that judgment is of the kind that the discretionary function was designed to shield." *Gaubert*, 499 U.S. at 322-23.  The exception only protects government actions and decisions based on considerations of social, economic, or political policy.  *Id.*

       1.  *What is the Relevant Conduct for Determining Application of the Discretionary Function Exception.*

In determining the application of the discretionary function exception here, the United States contends the relevant conduct at issue was the postmaster's decision to allow 24-hour access to the lobby and post office box areas of the Centennial Post Office.  The United States argues the postmaster's decision to allow 24-hour access and under what conditions, falls within the type of governmental decision-making protected by the discretionary function exception.

In support of its argument, the United States cites to *Hogan v. U.S. Postmaster Gen.*, 492 Fed. Appx. 33 (11th Cir. Oct. 11, 2012), an unpublished decision of the Eleventh Circuit.  The case involved a slip and fall on water that had accumulated on the lobby floor of a post office after regular business hours. The government asserted that the discretionary function exception barred the claim, arguing that the conduct at issue was the decision to allow twenty-four-hour access to the post office boxes.  *Id.* at 35.  The plaintiff disagreed, and argued that

the conduct to be evaluated was whether the Postal Service followed safety procedures related to cleanup of wet floors. *Id.* at 35. The Eleventh Circuit agreed with the government, and found that because the postmaster had discretion whether to keep the lobby open after hours, the postmaster's decision to maintain certain safety procedures in connection with the 24-hour access was also discretionary. *Id.* at 35-36. *See also Bell v. U.S.*, 238 F.3d 419 (6th Cir. 2000) (unpublished) (finding discretionary function exception barred suit by post office patron who slipped and fell in lobby after hours); *Bonebrake v. U.S.*, 2021 WL 4844717 (W.D. Wash. Oct. 18, 2021) (same).

Plaintiff disagrees that *Hogan* applies here, and relies on *Fikani v. U.S.*, 2021 WL 2000298 (D. Mont. May 19, 2021), a case from this District that reached the opposition conclusion. In *Fikani*, the plaintiff was injured when she slipped and fell on a puddle of water in the lobby of the Belgrade, Montana Post Office. *Id.* at *1. As in this case, the government argued it was exempt from liability under the discretionary function exception. *Id.* The government asserted the postmaster's decision to maintain 24-hour access to the lobby was discretionary, and that all other operational choices relevant to the case stemmed from that discretionary decision. *Id.* at *2. The plaintiff conceded that keeping the lobby open was a discretionary decision, but argued the conduct at issue was the failure to maintain a safe customer area, which was not a discretionary action. *Id.*

13

The *Fikani* court agreed with Plaintiff.  The court found that the postmaster had discretion to allow the lobby to be open for 24-hour access.  *Id.*  But the court held that once the decision to keep the lobby open was made, the Postal Service did not have discretion as to whether to maintain safety standards in the lobby.  *Id.* The court noted that the Postal Operations Manual and Supervisor's Safety Manual imposed specific safety duties and responsibilities that were non-discretionary, including a requirement to "always maintain a dry area for pedestrian traffic."  *Id.* The court, therefore, found the discretionary function exception did not apply.  *Id.*

The *Fikani* court further stated that even if the Postal Service had discretion to decide whether or not to maintain a dry area for pedestrians after hours, that was not the type of "social, economic, or political policy" judgment that the discretionary function was designed to shield.  *Id.*

The Court finds *Fikani* is the more persuasive authority.  Like the court in *Fikani*, the Court finds the conduct at issue here is not the postmaster's discretionary decision to allow 24-hour access to the post office lobby, but rather the subsequent execution of the policies and procedures for maintaining the reasonable safety of the premises.

The Ninth Circuit has recognized that, once the government undertakes a course of action, it must generally do so in accordance with any applicable mandatory directives.  In *Kim v. United States*, 940 F.3d 484 (9th Cir. 2019), for

14

example, two boys were killed when a limb from a large tree fell on their tent in a campground in Yosemite National Park.  A suit was subsequently brought under the FTCA, alleging that park officials knew or should have known of the danger posed by the tree, and negligently failed to abate the hazard or warn the public of the risk.

The government asserted that the claim was barred by the discretionary function exception, arguing that park officials had discretion over whether to inspect the tree in question.  The government further argued that, even if the tree were inspected, the determination as to the extent of the hazard posed by the tree was also within the discretionary function exception.

The Ninth Circuit disagreed with the government on both arguments.  With respect to the first, the court pointed out that the government acknowledged that it had, in fact, inspected the campground where the accident occurred, and hazardous trees were identified and abated.  The court thus framed the relevant issue as "[r]egardless of whether the discretionary function exception might apply to some hypothetical decision not to inspect the campground, . . . we must decide whether Park officials are shielded from liability for their conduct in actually inspecting that area once they undertook to do so."  *Kim*, 940 F.3d at 488.  The court said: "once the choice to pursue a project is made, the court 'look[s] at the nature of the

15

action in *conducting* the . . . project, not the decision to undertake' it." *Id*.  (quoting

*Myers v. United States*, 652 F.3d 1021, 1032 (9th Cir. 2011)).

With respect to the second argument, the court said that "[o]nce they

undertook to inspect trees in the campground, park officials were required to do so

in accordance with established policies."  *Kim*, 940 F.3d at 488.  The court pointed

to "Yosemite Directive No. 25" that specified how park officials were to evaluate

the risk posed by trees they inspected.  The court found that park officials may

have had discretion in deciding whether to adopt this method for evaluating trees;

but once adopted, it must be followed.  The court said: "[r]egardless of the policy

considerations that went into the choice to adopt the system, the *implementation* of

such system cannot be said to turn on those same considerations."  *Id*. at 489

(citing *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005) ("[W]e

have generally held that the *design* of a course of governmental action is shielded

by the discretionary function exception, whereas the *implementation* of that course

of action is not.")).  *See also, Marlys Bear Medicine v. U.S.*, 241 F.3d 1208, 1215

(9th Cir. 2001) ("[W]e have generally held that once the Government has

undertaken responsibility for the safety of a project, the execution of that

responsibility is not subject to the discretionary function exception."); *O'Toole v.

United States*, 295 F.3d 1029, 1036-37 (9th Cir. 2002) ("[T]he BIA was under no

obligation to acquire Bowler Ranch, but once it did, it also acquired the obligation

16

to keep its irrigation from causing harm to others to the same extent that a private landowner must."); *Nanouk v. United States*, 974 F.3d 941, 950 (9th Cir. 2020) (rejecting application of the discretionary function exception when the government undertook to clean up hazardous chemicals, then failed to effectively do so); *Indian Towing Co. v. U.S.*, 350 U.S. 61, 69 (1955) ("The Coast Guard need not undertake the lighthouse service.  But once it exercised its discretion to operate a light on Chandeleur Island . . . it was obligated to use due care to make certain that the light was kept in good working order."); *Whisnant v. U.S.*, 400 F.3d 1177, 1182 n.2 (9th Cir. 2005) (noting that although *Indian Towing* was not a discretionary function exception case, the Supreme Court and Ninth Circuit have treated it as relevant authority, because the decision "illuminates the appropriate scope of the discretionary function exception").

Applying these principles here, the relevant conduct for evaluating application of the discretionary function exception is the maintenance of the parking lot, not the decision to allow 24-hour access to the post office lobby.  As in *Meyers* and *Kim*, once the Postal Service made the choice to allow 24-hour access, a court should look at its conduct in implementing that decision, not the decision itself.  In this case, the Postal Service may have had discretion in deciding whether to allow 24-hour access to the lobby and post office box areas of the post office;

but once it chose to do so, it was required to operate the post office in accordance with any relevant directives for customer safety.

Additionally, framing the conduct at issue broadly, as the Eleventh Circuit did in *Hogan*, raises a concern previously expressed several times by the Ninth Circuit, that expansive application of the discretionary function exception threatens to swallow the FTCA. *See e.g.*, *Bolt v. U.S.*, 509 F.3d 1028, 1034 (9th Cir. 2007); *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002). The Ninth Circuit has recognized that "[s]uch a risk is "especially great" where, as here, "the government takes on the role of a private landowner. Every slip and fall, every failure to warn, *every inspection and maintenance decision* can be couched in terms of policy choices based on allocation of limited resources." *Whisnant*, 400 F.3d at 1183. This risk would be significantly magnified if the discretionary function applied to a course of conduct simply because it can be linked to a remote discretionary decision.

> 2. *Application of the Discretionary Function Exception to the Maintenance of the Parking Lot.*

Having identified the conduct at issue in this case as the maintenance of the parking lot and the post office premises, the Court further finds the discretionary function exception does not apply under either prong of the *Gaubert* test.

First, although the postmaster has discretion to allow customers access to lobbies outside of business hours,[3] the Postal Service has internal policies that specify duties and responsibilities for maintaining the safety of postal premises. These policies are not discretionary, but rather contain mandatory language.

For example, the EL-801 Supervisor's Safety Handbook requires the Postal Service to maintain parking lots, platforms, driveways and sidewalks, including the removal of snow and ice.  (Doc. 34-1 at 193, 210.)  Specifically, the Safety Handbook requires that the Postal Service "*must* establish snow and ice removal plans were necessary."  (*Id.* (emphasis added).)  The Postal Service is further directed to "[p]ay particular attention to areas where customers and other pedestrians may slip and fall" and to "[p]rovide for reinspection and cleaning as often as necessary to handle drifting snow and refreezing."  (*Id.*)  Similarly, the Maintenance Handbook MS-10 Floor, Care and Maintenance states "[s]now causes walkways, steps, driveways, and parking areas to become hazardous" and therefore, "[t]he timely removal of snow and ice is an *absolute necessity* to avoid serious injury to customers or employees."  (Doc. 34-1 at 196 (emphasis added).)

---

[3] Section 126.43 of the Postal Operation Manual, provides that "[a]t the postmaster's discretion, lobbies may remain open 24 hours a day to allow customers access to PO boxes and self-service equipment, provided that customer safety and security provisions are deemed adequate by the Inspection Service." (Doc. 28-5 at 6.)

The Postal Service is required to comply with these polices and regulations. *Fikani*, 2021 WL 2000298 at \*2 n. 25.  Thus, the postmaster's discretion over lobby hours does not diminish or eliminate the duty to maintain the reasonable safety of the premises.  *Id.* at \*2 ("[O]nce the decision to keep the lobby open was implemented, the duty assumed by the United States with respect to maintenance of a safe customer area was both dictated and required by the [EL-801 Supervisor's Safety] Handbook.").

Second, even if the Postal Service had discretion in deciding how to implement the maintenance policy after regular business hours, such discretion is not the type of decision-making that the discretionary function exception was designed to protect.  In *Bolt v. United States*, the Ninth Circuit determined that "clearing snow and ice from parking lots" on federal premises is a matter of routine maintenance that is "beyond the scope of the discretionary function exception."  *Bolt v. United States*, 509 F.3d 1028, 1034 (9th Cir. 2007) (noting that "'maintenance work is not the kind of regulatory activity' to which the Supreme Court envisioned the discretionary function exception applying.").

Accordingly, the Court find the United States is not entitled to summary judgment on the basis of the discretionary function exception to the FTCA.

/ / /

/ / /

20

## C.    Open and Obvious Condition

Finally, the United States argues Plaintiff's claims fail because the ice she slipped on was open and obvious.

Under Montana law, the applicable standard of care in the context of premises liability is as follows:

> The possessor of the premises has a duty to use ordinary care in maintaining the premises in a reasonably safe condition and to warn of any hidden or lurking dangers. What constitutes a reasonably safe premises is generally considered to be a question of fact. Whether a premises is reasonably safe depends to a large extent on what use the property is put to, its setting, location and other physical characteristics; the type of person who would foreseeably visit, use or occupy the premises; and the specific type of hazard or unsafe condition alleged. The possessor of the premises is not liable to persons foreseeably upon the premises for physical harm caused to them by any activity or condition on the premises whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

*Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 950 P.2d 748, 755-56 (Mont. 1997).

In *Richardson*, the Montana Supreme Court further explained that "the possessor of the premises may no longer avoid liability simply because a dangerous activity or condition on the land is open and obvious." *Id.* at 756. Rather, the possessor "may only be absolved from liability for injuries resulting from open and obvious dangers if he should *not* have anticipated harm to occur." *Id.* "[T]his includes avoiding liability for open and obvious natural accumulations of ice and snow." *Id.*

21

Here, the Court finds there are disputed issues of material fact regarding whether the ice Plaintiff slipped on was an open and obvious condition.  The United States argues the condition of the parking lot was open and obvious, because Plaintiff was aware the parking lot was icy, was aware it was winter in eastern Montana, and had picked up the mail numerous times before without incident.  Plaintiff counters that she was not injured by an open or obvious condition, but rather by black ice that appeared to be a clear patch of asphalt. (Doc. 28-1 at 4-5.)

Further, there are issues of fact regarding whether the United States should have anticipated the harm to Plaintiff.  Plaintiff points out that several employees had arrived at the post office long before she did, and at least some of them parked in the parking lot.  (Doc. 34-1 at 29-30, 44-45.)  The postal employees had ice melt and warning signs that they could (and sometimes did) use to diminish the danger of snow and ice on the premises when necessary.  (*Id.* at 37-40, 92-94.)  Plaintiff also testified that a postal employee came to check on her after she fell indicating the United States had the ability to monitor the parking lot.  (Doc. 28-1 at 7-8.) Whether these factors demonstrate the United States should have anticipated harm is a factual question which should be resolved by a jury.

Accordingly, summary judgment is not appropriate.

/ / /

## IV.    CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that the United States' Motion for Summary Judgment (Doc. 26) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 9th day of February, 2023.

TIMOTHY J. CAVAN
United States Magistrate Judge