IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KIMMIE S. BAGLEY,<br><br>                    Plaintiff,<br><br>vs.<br><br>UNITED STATES,<br><br>                    Defendant. | CV 21-112-BLG-SPW<br><br><br>ORDER |

United States Magistrate Judge Timothy Cavan filed Findings and Recommendations in this matter on February 9, 2024. (Doc. 40). Judge Cavan recommended the Court deny Defendant the United States' Motion for Summary Judgment (Doc. 26). (Doc. 40).

The United States timely objected the Findings and Recommendations (Doc. 41), and Plaintiff Kimmie S. Bagley timely filed a response (Doc. 44).

After a careful review of the United States' objections, the Court adopts Judge Cavan's Findings and Recommendations as to his recommendation to deny summary judgment on the three bases asserted by the United States and rejects his reasoning on the discretionary function exception.

//

//

1

## I.  Legal Standard

### A.  Findings and Recommendations

The parties are entitled to a de novo review of those findings to which they have "properly objected." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). The portions of the findings and recommendations not properly objected to are reviewed for clear error. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

An objection is proper if it "identif[ies] the parts of the magistrate's disposition that the party finds objectionable and present[s] legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Mont. Shooting Sports Ass'n v. Holder*, No. CV 09-147-M, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). "It is not sufficient for the objecting party to merely restate arguments made before the magistrate or to incorporate those arguments by reference." *Id.*

### B.  Summary Judgment

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477

U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See id.* at 587.

## II.   Background

The parties do not object to Judge Cavan's factual findings.  As a result, the Court adopts the facts as set out by Judge Cavan and will briefly summarize those pertinent facts here.

Plaintiff arrived at the Centennial Post Office ("Post Office") at 2250 Grant Road in Billings, Montana just before 7:30 a.m. on January 4, 2019.  (Doc. 34 at 2). She parked her truck closest to the door, which she usually does when she stops to get her employer's mail on her daily drive to work.  (*Id.*).  When she opened her door, she saw snow and ice on the ground next to her truck.  (*Id.*).  She also noticed a clear patch of asphalt, which she stepped out on.  (*Id.* at 4).  It was actually black ice, and her foot slipped out from underneath her.  (*Id.*).  Plaintiff scraped her back and hit her head and neck on the truck's running board.  (*Id.*).

At the time of the incident, the Post Office was open between 8:30 a.m. and 5:30 p.m.  (*Id.* at 16).  However, following a decision by the postmaster pursuant to

Postal Service regulations,[1] the Post Office lobby was open 24 hours a day.  (*Id.* at 15).

Also at the time, the Post Office had contracted with Jones Lang Lasalle, Inc. ("Contractor") for snow and ice removal at post offices in the Dakotas District, which includes Montana.  (*Id.* at 4).  The contract required, as relevant here:

- A.1.1.1 The Contactor [sic] shall maintain the assigned facilities free from all hazardous conditions that may develop from ice or snow at entrances, steps, landings, sidewalks, and parking lots. All sidewalks, stairways, and parking lots shall be clear of all snow and ice at least one hour prior to the beginning of business hours to accommodate mail trucks and on an as-needed basis throughout the duration of the storm.
- A.1.1.5.1 Parking Lots - If the accumulation of snow exceeds two (2) inches, the Contactor [sic] shall commence the snow removal operation without further notification, in accordance with the SOW.
- A.1.1.6 Ice control – If ice is present, the Contactor [sic] shall apply a deicer that will effectively melt the ice. Deicer is included in the seasonal price to include labor to apply the deicer.
- A.1.3 CUSTOMER CALL CENTER – The Contactor [sic] shall establish a 24-hour customer call center to receive and respond to service requests and inquiries from the facilities under the contract. The Contactor [sic] shall have a 24-hour customer service number for the facilities to call for service. The Contactor [sic] shall respond to the service calls within two (2) hours of receiving the call if the complaint is that service has not provided [sic] when the snow triggers exist: 2" of snow on the ground in the parking lot, 1" of snow on the sidewalks, and/or ice is present. If no response within 2 hours, the call is to be escalated to the Contracting Officer for administrative action.

(Doc. 28-2 at 24, 26).

---

[1] The provision of the regulation providing the postmaster with this discretion reads, "At the postmaster's discretion, lobbies may remain open 24 hours a day to allow customers access to PO Boxes and self-service equipment, provided that customer safety and security provisions are deemed adequate by the Inspection Service."  (Doc. 28-5 at 6).

On November 4, 2021, Plaintiff sued the United States under the Federal Tort Claims Act ("FTCA") for negligence. (Docs. 1, 21). The United States moved for summary judgment on March 2, 2023, arguing that the contractor and discretionary function exceptions to the FTCA's sovereign immunity waiver applied and divested the Court of jurisdiction. (Doc. 26). Alternatively, the United States argued summary judgment was proper as a matter of law on the merits of Plaintiff's negligence claim. (*Id.*).

## III.   Discussion

The United States filed the following objections to Judge Cavan's Findings and Recommendations:

(1) Judge Cavan incorrectly determined that the independent contractor exception to the FTCA did not apply because Plaintiff raised a fact question regarding whether the United States retained at least some of its duty to maintain the Post Office parking lot.

(2) Judge Cavan incorrectly concluded that the FTCA's discretionary function does not apply to injuries sustained on Postal Service premises outside regular business hours; and

(3) Judge Cavan erred in finding that a material fact issue existed as to whether the hazard presented by the ice in the Post Office parking lot was an open and obvious condition.

5

(Doc. 41).

Each objection is proper, and the Court will review Judge Cavan's findings on the issues they raise de novo.

### A.    Independent Contractor Exception

The United States and its agencies are immune from suit absent a specific waiver of sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). When the United States does not waive sovereign immunity, the Court lacks jurisdiction to hear the claim. *Id.* The FTCA functions as a limited waiver of sovereign immunity by the United States and its agencies because, pursuant to the FTCA, the United States and its agencies consent to be sued for certain tort claims. *Molzof v. United States*, 502 U.S. 301, 305 (1992). *See also* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances").

However, the FTCA contains a variety of exceptions to the sovereign immunity waiver, including what is known as the independent contractor exception under 28 U.S.C. § 2671. The FTCA's limited waiver of sovereign immunity "contains an explicit exception for contractors, such that the federal government is not liable for torts committed by its contractors." *U.S. ex rel. Ali v. Daniel, Mann,*

*Johnson & Mendenhall*, 355 F.3d 1140, 1146 (9th Cir. 2004) (citing 28 U.S.C. §§ 1346(b), 2671).

But the United States is not "absolved of all liability, no matter what the injury complained of or its cause, any time it hires an independent contractor." *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). The independent contractor exception "has no bearing on the United States' FTCA liability for its *own* acts or omissions." *Id.* at 518 (emphasis in original). "Thus, a determination that the United States has declined to exercise control over the day-to-day operations of its contractor is not the end of the analysis." *Id.* The Court also must determine whether a plaintiff has alleged a separate nondelegable or undelegated duty, which the United States could be held directly liable for breaching. *Id.* "Only upon a finding that the government delegated its *entire duty* of care may the court dismiss the claim for lack of jurisdiction under the FTCA's independent contractor exception." *Id.* (emphasis in original).

In the Ninth Circuit, the United States' liability for its own acts or omission is a three-step inquiry. *Id.* at 519. First, the Court must determine if state law would impose a duty of care on a private individual in a similar situation. *Id.* Second, if it would, the Court then looks "to the contract and the parties' actions to determine whether the United States retained some portion of that duty for which it could be held directly liable." *Id.* Third, even if it appears the United States delegated all its

7

duties to the independent contractor, the Court determines whether state law imposed any nondelegable duties on the United States. *Id.*

Judge Cavan found the first element was satisfied because Montana law undisputedly imposes upon a possessor of a premises a general duty to maintain a premises in a reasonably safe condition. (Doc. 40 at 7 (citing *Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 950 P.2d 748, 755–56 (Mont. 1997))). The United States does not object to this finding. The Court reviews it for clear error and finds none.

As to the second element, Judge Cavan found that "Plaintiff provided sufficient evidence from which a rational trier of fact could find the United States retained at least some of its duty to maintain the premises in a reasonably safe condition with respect to snow and ice for which it could be held directly liable." (*Id.* at 10). Judge Cavan specifically noted the fact that the "Contractor was only required to perform snow removal without notification during certain hours and when snow accumulations were greater than two inches." (*Id.*). He also pointed out that postal employees had resources to treat snow and ice on the premises, and had done so on other occasions. (*Id.*). Given these facts, "the exact scope of the United States' shared responsibility, and whether it exercised reasonable care in this case, are genuine issues of fact requiring trial." (*Id.*).

The United States objects to this finding on the grounds that it "runs contrary to witness testimony and the plain language of the snow removal contract[.]" (Doc. 41 at 3). As to the witness testimony, the United States quotes testimony from Darci Spitzer, the manager of customer service at the Centennial Post Office at the time of Plaintiff's fall, to argue that there is "no evidence that Postal Service employees had the means to mitigate ice and snow in the parking lot, nor that they had ever done so." (*Id.* at 4–5 (citing Doc. 34-1 at 37–40, 66–67)).

As to the contract, the United States argues that Judge Cavan incorrectly interpreted the contract as only requiring the Contractor to perform snow removal without notification during certain hours. (*Id.* at 5). "This conclusion does not square with the plain language of the contract, which requires JLL to ensure "all sidewalks, stairways, and parking lots shall be clear of all snow and ice <u>at least</u> one hour prior to the beginning of business hours." (*Id.* (quoting Doc. 28-2 at 24) (emphasis added and quote "cleaned up" in brief)). The United States argues the contract is correctly interpreted as requiring snow and ice to be clear not later than an hour before opening, not as limiting the time during which the Contractor was responsible for clearing. (*Id.* at 5–6).

As to Spitzer's testimony, the Court agrees that the contract delegated all responsibility for deicing the parking lot to the Contractor, and there is no evidence that postal employees spread deicer in the parking lot. (Doc. 28-2 at 24; Doc. 34-1

at 40–41). However, the United States is incorrect that postal employees did not have the tools to spread deicer. Spitzer testified they had a salt/ice removal, a bucket, and a scoop. (Doc. 34-1 at 37–38). Further supporting the employees' ability to deice in the parking lot is the fact they deiced in other areas of the premises "for safety" if the contractor had not showed up yet. (*Id.* at 39–41). Even if employees did not have the ability to deice, they could call the Contractor at any time of day to deice and had done so in the past. (*Id.* at 222–224). Last, postal employees had the ability to warn of dangers, even if they did not/could not mitigate them, with the caution and warning signs. (*Id.* at 92–93).

As to the United States' challenges to Judge Cavan's interpretation of the contract, the United States misrepresents Judge Cavan's conclusions. Judge Cavan's language regarding the Contractor's responsibility to clear snow only during "certain hours" is not reasonably read as concluding that the Contractor only was required to be there during specific hours of the day. Rather, Judge Cavan was commenting on the fact that the Contractor did not need to be at the Post Office clearing snow 24 hours a day, 365 days a year. The Court also does not read Judge Cavan's order as disagreeing with the contention that the contract requires snow to be clear no later than one hour before the Post Office opens.

The Court more generally agrees with Judge Cavan's conclusion that the contract reserves some portion of the duty to maintain a safe premises for the United

10

States.  Specifically, the contract implicitly reserves for postal employees the duty to call for immediate snow removal if there are less than two inches of snow on the ground and the employees want the removal done without regard to the usual deadline (one hour before the beginning of business hours).  As to the United States' argument that the call center was only for complaints that service had not been provided if there was ice or more than two inches of snow, the United States' "cleaned up" quote on which this contention relies mischaracterizes the contract provision.  The entire quoted sentence requires the Contractor to respond within two hours if the complaint is about ice or more than 2 inches of snow; it does not limit when postal employees can call, as demonstrated by the call log.  (Doc. 28-2 at 26; Doc. 34-1 at 222–24).  Rather, the call center exists simply "to receive and respond to service requests and inquiries from the facilities under the contract."  (Doc. 28-2 at 26).

The United States also disagrees with what it describes as Judge Cavan's "tiered" analysis of the United States' retained duties.  (Doc. 41 at 6).  Though the Court is not clear what the United States means by tiered, the Court understands the United States' argument as taking issue with Judge Cavan only looking at the trigger for the Contractor to remove snow rather than snow and ice.  (*Id.*).  The United States also challenges Judge Cavan's supposed implication that "it was on the Postal

Service to remove snow" when the two-inch threshold was not met, which the contract does not require. (*Id.*).

Again, the Court agrees that the contract delegated all responsibility for deicing the parking lot to the Contractor, and there is no evidence that postal employees spread deicer in the parking lot. However, the United States' argument also ignores that the contract reserved for postal employees the ability to call the Contractor as needed, and that postal employees salted other areas outside as needed for safety, despite the contract fully delegating that duty to the Contractor. *See Merritt v. United States*, 592 F. Supp. 3d 340, 349–50 (D. Vt. 2022) (distinguishing cases where the FTCA did not apply because employees never salted or sanded outdoor areas, and where government employees "rarely, if ever, set foot on the property, having completely delegated maintenance duties to third parties.").

The United States' argument also disregards the fact that the Postal Service did not delegate any of its duty to warn visitors of hazardous or slippery conditions. *See Parrish v. United States*, 157 F. Supp. 3d 434, 440–41 (E.D.N.C. 2016) (distinguishing between the government delegating the duty to perform repairs with the duty to inspect, and by extension, to warn). The record shows Postal Service employees had checked the exterior condition of the Post Office and noted icy conditions. The Post Office also had warning signs available to put out.

For these reasons, the Court overrules the United States' objections and adopts Judge Cavan's recommendation that summary judgment be denied as to the contractor exception to the FTCA.

### B.    Discretionary Function Exception

The United States' next objects to Judge Cavan's finding that material disputed facts exist as to whether the discretionary function exception to the FTCA sovereign immunity waiver applies.  The discretionary function exception limits the FTCA's waiver of sovereign immunity where claims are "based upon the exercise or performance ... [of] a discretionary function or duty of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  Where the discretionary function exception to the FTCA applies, no federal subject matter jurisdiction exists. *In re Glacier Bay*, 71 F.3d 1447, 1450 (9th Cir.1995).  While plaintiff bears the initial burden of proving subject matter jurisdiction under the FTCA, the United States "bears the ultimate burden of proving the applicability of the discretionary function exception...." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

A two-step analysis is used to determine whether the discretionary function exception applies. *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991); *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996).  "First, we ask whether the challenged actions involve 'an element of judgment or choice.'" *Sabow*, 93 F.3d at

1451 (quoting *Gaubert*, 499 U.S. at 322). "If a statute or policy direct[s] mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere to the directive." *Kim v. United States*, 940 F.3d 484, 487 (9th Cir. 2019) (internal citation and quotation marks omitted). "When a specific course of action is not prescribed, however, an element of choice or judgment is likely involved in the decision or action." *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008).

"Second, if the actions do involve an element of judgment, we must determine 'whether that judgment is of the kind that the discretionary function exception was designed to shield, namely, only governmental actions and decisions based on considerations of public policy.'" *Kim*, 940 F.3d at 487 (quoting *Terbush*, 516 F.3d at 1129). The relevant choice must be susceptible to some consideration of social, economic, or political policy. *Id.*

"Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged." *Young v. United States*, 769 F.3d 1047, 1053 (9th Cir. 2014) (internal citation and quotation omitted). Thus, before turning to the two-step inquiry, the Court must first identify Plaintiff's "specific allegations of agency wrongdoing." *Berkovitz v. United States*, 486 U.S. 531, 540 (1988). *See also Young*, 769 F.3d at 1053.

### 1. What is the Relevant Conduct

In front of Judge Cavan, the United States argued that the relevant conduct at issue was the postmaster's decision to allow 24-hour access to the lobby and post office box areas of the Centennial Post Office. (Doc. 40 at 12). According to the United States, the postmaster's decision to allow 24-hour access and, most relevant here under what conditions, falls within the type of the governmental decision-making protected by the discretionary function exception. The United States relies on an unpublished Eleventh Circuit case, *Hogan v. United States Postmaster Geneneral*, 492 F. App'x 33 (11th Cir. Oct. 11, 2012), which held that the relevant conduct in a slip-and-fall that occurred in a post office lobby after hours was the postmaster's decision to keep the lobby open for 24-hour access.

Plaintiff maintained that the relevant conduct is the failure to maintain safety on the premises. (Doc. 40 at 13). Plaintiff relied on an unpublished District of Montana case, *Fikani v. United States*, No. CV 19-64-BU, 2021 WL 2000298 (D. Mont. May 19, 2021), which found that the conduct at issue in another slip-and-fall that occurred in a post office lobby after hours was the failure to maintain a safe customer area. (*Id.*). *Fikani* held that once the decision to keep the lobby open was made, the Postal Service did not have the discretion as to whether to maintain safety standards in the lobby because the Postal Operations Manual (which serves as the Post Office's regulations, 39 C.F.R. § 211.2(a)(2)) and Supervisor's Safety Manual

mandated that the Post Office "always maintain a dry area for pedestrian traffic." *Fikani*, 2021 WL 2000298, at *2.

Judge Cavan found that *Fikani* was the more persuasive authority and concluded that the conduct at issue was the execution of the policies and procedures for maintaining the reasonable safety of the premises. (Doc. 40 at 14). Judge Cavan cited the Ninth Circuit decision, *Kim*, as support for the contention that "once the government undertakes a course of action, it must generally do so in accordance with any applicable mandatory directives." (*Id.* at 14–18 (citing *Kim*, 940 F.3d 484)). Last, Judge Cavan was persuaded to reject "framing the conduct at issue broadly, as the Eleventh Circuit did in *Hogan*" by the general policy of the Ninth Circuit that "expansive application of the discretionary function exception threatens to swallow the FTCA." (*Id.* at 18).

The United States objected to Judge Cavan's conclusion on the relevant conduct, contending that it "runs contrary to every known federal court decision issued before and after the aberrant ruling in *Fikani*." (Doc. 41 at 8). The United States goes on to cite 11 unpublished cases from various district and circuit courts.[2] (*Id.* 8–9). The United States also distinguishes *Kim* on the grounds that *Kim* involved a "non-discretionary act of filling out the rating checklist," whereas here

---

[2] The United States cited these cases in its opening brief but did not address *Fikani* in front of Judge Cavan.

"implementing 24-hour lobby access at the Post Office itself involves numerous overlapping discretionary decisions." (*Id.* at 10).

Plaintiff responds that *Fikani* is not aberrant, as other decisions—including two cited by the United States—"not[e] that ordinary maintenance such as removing snow and ice does not implicate an agency's unique policy priorities or trigger the discretionary-function exception, especially where specific maintenance rules and procedures are in place." (Doc. 44 at 7 (citing Doc. 33 at 19, 20)). Plaintiff then emphasizes Judge Cavan's distinction between the discretionary policy decision regarding lobby hours versus the maintenance procedures used to implement that decision. (*Id.* at 8).

The Court is not inclined to adopt *Fikani* on its face, not because it is necessarily aberrant, but because its reasoning on the relevant conduct does not engage any pertinent caselaw, other than the citation to the U.S. Supreme Court case establishing the two-step inquiry. 2021 WL 2000298, at *2. At the same time, the Court is not willing to adopt *Hogan* and the related cases on their faces since, other than one unpublished district court case from the Western District of Washington (*Bonebrake v. United States*, C19-1639, 2021 WL 4844717 (W.D. Wash. Oct. 18, 2021)), all are unpublished, out of circuit cases. It also appears that the Ninth Circuit favors a narrower view of the relevant conduct then other circuits, making the Court less inclined to adopt out-of-circuit caselaw without further analysis. Last, all the

above cases are factually different, involving slip-and-fall scenarios inside the lobby due to wet floors, which is governed by a different portion of the Postal Operations Manual than snow and ice removal.

*United States v. Young*, a published Ninth Circuit case from 2014, provides a sufficient framework for the Court to determine the relevant conduct without reference to the cases the parties argue are analogous. 769 F.3d 1047. *Young* involved a woman who fell into a hole at a national park when the snow beneath her collapsed due to heat from an adjacent transformer. *Id.* at 1051. She landed on a concrete pad underneath and was injured. *Id.* Plaintiff sued the National Park Service ("NPS") under the FTCA, alleging that the NPS negligently failed to warn Plaintiffs of a known, latent hazard (the transformer) the agency had created. *Id.* at 1051–52. The government moved to dismiss Plaintiffs' claim on the grounds it was barred by the discretionary function exception. *Id.* at 1052.

As here, *Young* first determined what the relevant conduct was. In the Ninth Circuit, as stated above, "[w]hether a challenged action falls within the discretionary function exception requires a *particularized analysis* of the specific agency action challenged." *Young*, 769 F.3d at 1053 (emphasis added). "To identify the particular agency conduct with which Plaintiffs take issue, we look to the allegations in the complaint." *Id.* (citing *Whisnant v. United States*, 400 F.3d 1177, 1184–85 (9th Cir. 2005)). "Our cases make clear that when determining whether the discretionary

18

function exception applies in a particular case, 'the question of how the government is alleged to have been negligent is critical.'" *Id.* at 1054 (quoting *Whisnant*, 400 F.3d at 1185).

The *Young* plaintiffs alleged the conduct at issue was the government's negligence "in failing to warn of a particular danger that it knew of and created," not the NPS's broader decisions about whether to warn the public of "hazards of a general nature within the park, whether known or unknown." *Id. Young* rejected the government's position that the court should broadly characterize the conduct because a narrow construction would "impermissibly collaps[e] the discretionary-function inquiry into a question of whether the government was negligent." *Id. Young* explained that this argument "misses the point" because, though the question of whether the government was negligent is irrelevant to the applicability of the exception,

> the question of how the government was negligent remains "critical" to the discretionary function exception inquiry—indeed, determining the precise action the government took or failed to take (that is, how it is alleged to have been negligent) is a necessary predicate to determining whether the government had discretion to take that action.

*Id.*

Here, the complaint alleges that the United States "breached its duty of care owed to Plaintiff by failing to provide reasonably safe premises for foreseeable visitors," specifically by failing to remove snow and ice, and/or to notify the

Contractor to have snow and ice removed form the premises. (Doc. 21 at 5–6). Thus, the relevant conduct, like in *Young*, is the United States' alleged failure to provide reasonably safe premises, specifically with respect to snow and ice removal, for foreseeable visitors. This framing largely mirrors that of Judge Cavan.

A published Eleventh Circuit case pertaining to after-hours security at a post office that chose to be open 24 hours appears to take a parallel approach to *Young* and departs from *Hogan*. *Hughes v. United States*, 110 F.3d 765 (11th Cir. 1997). There, the court looked at the same provision from the Postal Operations Manual pertaining to the postmaster's discretion to keep lobbies open "provided customer safety, security provisions and police protection are deemed adequate." *Id*. at 768 (Postal Operations Manual, § 221.2.23 (Issue 5, Jan. 31, 1983)). The relevant conduct the court analyzed at step one was not the postmaster's discretion to keep the lobby open 24 hours a day, as *Hogan* would instruct, but rather the security measures adopted by that post office. *Id*. at 768. The Court finds *Hughes'* approach more persuasive than *Hogan* and the related cases, as *Hughes* is published.

Accordingly, the Court finds that the relevant conduct is the United States' alleged failure to provide reasonably safe premises, specifically with respect to snow and ice removal, for foreseeable visitors. It adopts Judge Cavan's ultimate conclusion on the matter but rejects his reasoning.

//

## 2. *Application of the Discretionary Function Exception*

Moving to whether the discretionary function exception applied, Judge Cavan found it did not because the Supervisor's Handbook and Maintenance Handbook MS-10 Floor, Care and Maintenance contain mandatory language on how the Postal Service must maintain post office premises. (Doc. 40 at 19). Accordingly, the challenged action did not involve an element of judgment or choice. (*Id.* at 19–20). Judge Cavan further concluded that even though the Postal Service had discretion in deciding how to implement the maintenance policy after regular business hours, such discretion is not of the type that the discretionary function is designed to protect. (*Id.* at 20 (quoting *Bolt v. United States*, 509 F.3d 1028, 1034 (9th Cir. 2007)) ("'clearing snow and ice from parking lots' on federal premises is a matter of routine maintenance that is 'beyond the scope of the discretionary function exception.'")).

The United States contends that Judge Cavan erred in concluding that the provisions he cited were mandatory. (Doc. 41 at 10–11). The United States also argues that decisions related to after-hour Post Office operations, including snow and ice removal, are susceptible to policy analysis because the decisions "implicate the competing interest of customer convenience and fulfilling the agency's mission versus potential impacts to customer and employee safety." (*Id.* at 13–14). The United States relies on the *Hogan* line of district court cases discussed in the relevant conduct section to support this contention. (*Id.* at 14). It does not address *Bolt*.

21

Plaintiff responds that the Judge Cavan correctly characterized the provisions in the handbooks as mandatory and any discretionary decision as not implicating policy. (Doc. 44 at 11–12).

The Court agrees with Judge Cavan that one of the provisions related to snow and ice removal contains mandatory directives, though others he cited do not. The provision, "Pay particular attention to areas where customers and other pedestrians may slip and fall, and where vehicle maneuvering can be hazardous," requires the Postal Service to "[p]ay particular attention" to those areas. (Doc. 34-1 at 193). However, the provision does not require the Postal Service to do anything but "pay attention," and Plaintiff does not allege the Postal Service failed to simply pay attention.

However, the remaining provisions cited by Judge Cavan do not. First, "Provide for reinspection and cleaning *as often as necessary* to handle drifting snow and refreezing," requires judgment as to the frequency the conditions necessitate. (*Id.*) (emphasis added). Likewise, the provision in the Maintenance Handbook requires a judgment of what constitutes "timely" removal of snow to avoid serious injury to customers or employees. (*Id.* at 196). Additionally, this provision appears in an introductory section, rendering it more prefatory language than a mandatory directive. (*Id.*).

Last, the provision in the Supervisor Handbook that reads, "You must establish snow and ice removal plans *where necessary*," also requires a judgment as to whether the plan is necessary. (*Id.* at 193) (emphasis added). Admittedly, the United States exercised this judgment and adopted a plan—the contract with the Contractor—and therefore could be held liable for not following the plan. *See Kim*, 940 F.3d at 487–89 (holding that the agency exercised the discretion to adopt a specific method for evaluating trees, so the implementation of the system was mandatory). However, nothing in the record demonstrates, nor does Plaintiff assert, that the Postal Service violated any of the terms of the contract. Thus, Plaintiff has no cause of action for a violation of this provision.

Moving to step two, the Court agrees with Judge Cavan's conclusion that the conduct does not involve the kind the exception was designed to shield. Unlike other circuits, the Ninth Circuit is clear that "matters of scientific and professional judgment—particularly judgments concerning safety—are rarely considered to be susceptible to social, economic, or political policy." *Whisnant*, 400 F.3d at 1181. Even more specifically, the Ninth Circuit has held (as Judge Cavan recognized) that "clearing snow and ice from parking lots" on federal premises is a matter of routine maintenance that is "beyond the scope of the discretionary function exception." *Bolt*, 509 F.3d at 1034. The conduct is not the kind the exception was designed to shield.

23

Accordingly, the Court overrules the United States' objections to Judge Cavan's conclusions on the matter, adopts Judge Cavan's recommendation to deny summary judgment, and rejects his reasoning at step one.

### C.    Open and Obvious

The United States last challenges Judge Cavan's denial of summary judgment on the merits of Plaintiff's negligence claim, specifically his finding that disputed facts exist as to whether the ice Plaintiff slipped on was open and obvious and whether the United States should have anticipated the harm to Plaintiff.

Under Montana law, the applicable standard of care in the context of premises liability imposes a duty on the possessor of a premises "to use ordinary care in maintaining the premises in a reasonably safe condition and to warn of any hidden or lurking dangers." *Richardson*, 950 P.2d at 755. "What constitutes a reasonably safe premises is generally considered to be a question of fact." *Id.* At the same time, "[t]he possessor of the premises is not liable to persons foreseeably upon the premises for physical harm caused to them by any activity or condition on the premises whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge and obviousness." *Id.* at 755–56. "[T]his includes avoiding liability for open and obvious natural accumulations of ice and snow." *Id.* at 756.

Judge Cavan found that disputed issues of material fact exist regarding whether the ice Plaintiff slipped on was open and obvious. (Doc. 40 at 22). On the one hand, the United States argued the condition was open and obvious because Plaintiff was aware the parking lot was icy, was aware it was winter in eastern Montana, and had picked up the mail numerous times. On the other hand, Plaintiff countered the ice was not open and obvious because it was black ice that appeared to be a clear patch of asphalt.

The United States contends Judge Cavan's conclusion was incorrect because it too narrowly focused on the "one dinnerplate-sized patch" of ice rather than the parking lot as a whole. (Doc. 41 at 15). Plaintiff admitted she noticed the Post Office parking lot was icy, so "even assuming she thought her first step would be on dry ground, she knew every step thereafter would be on icy ground and she chose to confront that circumstance anyway." (*Id.*). The United States further contends that viewing the circumstances this "finely" would result "[t]he open and obvious doctrine [to] ring hollow." (*Id.*). The United States analogizes to *Richardson*, which it describes as rejecting the plaintiff's attempt to argue "that the portion of the snow packed path on which she fell" was not open and obvious when the plaintiff admitted to perceiving the entire path as snow covered. (*Id.*). The United States also cites *Edmundson v. Magic Diamond Casino* as holding "the mere existence of black ice,

without more, is not an unsafe condition." (*Id.* (citing CV 06-100-M, 2008 WL 11417004 (D. Mont. Feb. 4, 2008))).

Plaintiff retorts that the United States' argument contradicts the holding in *Edmundson*, since the court in *Edmundson* denied summary judgment because the question of whether black ice caused a slip-and-fall remained one over which reasonable minds could differ. (Doc. 44 at 13). Plaintiff also distinguishes *Richardson* because, unlike here, it involved an area whose condition the plaintiff could and did perceive before walking on it. (*Id.*).

The Court agrees with Judge Cavan's conclusion that the question of whether the ice was open and obvious is disputed. Plaintiff perceived the spot she was stepping on as clear, which a reasonable mind could interpret as constituting a hidden danger. The United States' attempt to downplay the specific spot Plaintiff stepped on ignores that Plaintiff was hurt where she perceived the asphalt to be clear. Reading the facts most favorably to Plaintiff, Plaintiff's actions could reasonably be interpreted as showing she took particular care in deciding whether and where to step out of her vehicle in light of, not despite, what she perceived in the rest of the parking lot.

Additionally, the Court agrees with Plaintiff's readings of *Edmundson* and *Richardson*. In *Edmundson*, the *plaintiff* moved for summary judgment, arguing that the mere existence of black ice was enough to overcome the open and obvious

hurdle. 2008 WL 11417004, at *1. The court found that it was not, and therefore denied summary judgment. *Id.* The United States' cherry-picked quote from *Edmundson* is insufficient for this Court to conclude that a grant of summary judgment is warranted.

*Richardson*'s facts are too distinct for an effective analogy. As Plaintiff writes, the plaintiff in *Richardson* observed the entire path as snowy and chose to walk on it anyway, whereas here, Plaintiff perceived some areas as icy and chose to step on the portion she believed was not. 950 P.2d at 757.

For these reasons, disputed material facts exist as to whether the ice Plaintiff slipped on was open and obvious.

Judge Cavan also held that there was a dispute of material fact as to whether the United States should have anticipated the harm, even if the danger was known or obvious. (Doc. 40 at 22). He notes that several employees had arrived at the Post Office long before Plaintiff had, and at least some had parked in the parking lot; the employees had ice melt and warning signs they could (and sometimes did) deploy to diminish the danger of snow and ice on the premises when necessary; and an employee came to check on Plaintiff after she fell, indicating the United States had the ability to monitor the lot. (*Id.*).

The United States objects to this conclusion, arguing that the government could not have anticipated Plaintiff would injure herself after she "knowingly"

stepped onto a parking lot she knew was generally icy. (Doc. 41 at 15–16). The United States also contests the veracity of the facts Judge Cavan found created a dispute of fact. (*Id.* at 16).

Plaintiff again turns the United States' argument on itself, pointing out that *Edmundson* denied summary judgment on the question of whether the defendant should have anticipated the harm. (Doc. 44 at 14). And unlike *Richardson*, where the plaintiff presented no evidence to contradict defendant's position that the sidewalks were appropriately maintained at the time of her fall, "there is a wealth of evidence in this case that the parking lot was not appropriately maintained or safe to walk on at the time of the incident." (*Id.*).

The Court agrees with Judge Cavan and Plaintiff. The Court is particularly convinced by the fact that other postal employees had arrived at the Post Office earlier than Plaintiff, and some parked in the lot and presumably observed the conditions. The United States only counterpoint to this is that photos indicate there were no other cars in the parking lot when Plaintiff arrived. But this is immaterial and misrepresents the thrust of Judge Cavan's conclusion, which was that postal employees must have observed the parking lot between when the postal clerks arrived at 3 a.m. and Plaintiff arrived at 7:30 a.m. In fact, Spitzer testified that the clerks would have left by 6 a.m., thus giving them another, more contemporaneous opportunity to observe the conditions of the parking lot. (Doc. 34-1 at 30).

For these reasons, the Court overrules the United States' objections, finds Judge Cavan did not err in concluding summary judgment was inappropriate on Plaintiff's negligence claim, and adopts his findings on this issue in full.

## IV.    Conclusion

IT IS SO ORDERED that Judge Cavan's Findings and Recommendations (Doc. 40) are ADOPTED in full as to recommendation to deny summary judgment as to the contractor exception, the discretionary function exception, and the negligence claim.  His Findings and Recommendations are REJECTED only as to his reasoning on the applicability of the discretionary function exception.

IT IS FURTHER ORDERED that Defendant the United States' Motion for Summary Judgment (Doc. 26) is DENIED.

DATED this 26th day of March, 2024.

Susan P. Watters

SUSAN P. WATTERS
United States District Judge